26 C.C.P.A. (Patents)

### In re HENDRICKS.

### Patent Appeal No. 4123.

Court of Customs and Patent Appeals.

May 1, 1939.

Arthur R. Woolfolk, of Milwaukee, Wis. (Chester W. Brown, of Chicago, Ill., and Carl A. Hellmann, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the examiner which rejected, in view of the prior art cited, claims 16, 18, 22 to 27 inclusive and 34 of an application for a patent for repeating fuse construction. Twenty-five claims were allowed.

The references are: Boicourt et al., 1,-806,593, May 26, 1931; Bowie, 1,940,203, December 19, 1933.

Appellant moved, during the argument here, to dismiss the appeal as to claims 16 and 18, which motion will be granted.

Claim 22 is illustrative of claims 22 to 27 inclusive and is stated in the brief of appellant to be sufficient for the purpose of discussion of this group of claims: "22. A repeating fuse construction comprising a first fuse unit and a second fuse unit, a fuse link in each fuse unit, an electric line normally connected through said first fuse unit, said first fuse unit including a fuse tube for the fuse link, said fuse tube being mounted to drop outwardly when said fuse link is ruptured, a normally open switch movable to closed position when said first fuse unit blows, said switch upon closing connecting said second fuse unit in the electric line, and switch opening means operatively connected with said switch and arranged in the path of return movement of said first fuse unit when said first fuse unit is rocked back to operative position, said means directly opening said switch upon the backward rocking motion of said first fuse unit."

Claim 34 was separately considered by both tribunals below and reads as follows: "34. A fuse construction comprising a supporting member, a fuse tube movably supported by said supporting member, said supporting member having a pair of stationary contacts, said fuse tube having a pair of spaced contacts normally engaging said stationary contacts, a fuse link within said fuse tube electrically joining said spaced contacts, latch means independent of said fuse link for restraining said fuse tube against motion with reference to said supporting means, and releasing means for releasing

said latch means, said releasing means being biased towards latch releasing motion and being restrained against motion by said fuse link, whereby when said fuse link is ruptured said releasing means will release said latch means."

The invention relates to a repeating fuse construction in electric current lines and discloses a plurality of fuses which come into successive operation so that when one fuse is blown the line is automatically transferred to a succeeding fuse so that the electric service is substantially continuous.

The patent to Boicourt et al., relates to an apparatus for use in electric circuits whereby after one fuse has been blown out another fuse will be automatically substituted in the circuit. This patent discloses the fuses in tubes on the outside of a casing which encloses means operable, including a transfer switch, to substitute the succeeding fuses in the circuit.

The Bowie patent relates to improvements in an electrical circuit cutout where the blowing of a fuse causes the cutout to be actuated. It discloses a cutout structure including a fuse tube enclosed in a casing.

The application and the references each discloses the fuse in a tube which is hinged in the structure at its lower end so that upon the blowing of the fuse, the tube is released from its top support and falls outwardly pendent upon said hinge.

The examiner and the board rejected claims 22 to 27 inclusive on the patent to Boicourt et al. The examiner rejected these claims on the ground that the combination of elements is old as shown by Boicourt et al., and the board affirmed this ground of rejection.

Appellant contends that claims 22 to 27 inclusive show a structure patentably different from that disclosed by Boicourt et al., by reason of the fact that, in the patent, when the tube is refused, the transfer switch through which the successive fuses are actuated must be restored to its normal open position by independent manual operation, while in the device of appellant, when the refused tube is rocked back into service position, the switch is automatically restored to its normal open position. In the application the switch opening means is arranged in the path of the return movement of the tube to its normal position.

This difference between the structure of appellant and that of the said patent is clear.

The means of opening the switch is described in the application as a yoke which bears against the fuse tube and is rigidly connected to the switch blade. Thus when the fuse tube is rocked back into normal position, it in turn rocks the yoke and the switch blade back into their original positions.

While the Boicourt et al., device contains a combination of elements for dropping fuse tubes in succession upon the rupture of each preceding fuse link, there is no suggestion in said patent of any automatic means for restoring the switch. Because of the aforesaid difference between the structure of the patent and that of appellant, the device of appellant, in our opinion, operates in a manner impossible of operation by the device of the patent and we cannot see the slightest suggestion in the patent disclosure which, if followed, would result in even an approximation of the construction of the device of the application as defined in this group of claims. The improvement set out by appellant, as we view it, is not at all obvious to one skilled in the art and it clearly involves invention. Therefore, the decision of the board will be reversed as to claims 22 to 27 inclusive.

Since the claims specify the particular mechanism by means of which automatic control is substituted for manual control the case of In re Rundell, 48 F.2d 958, 18 C.C.P.A., Patents, 1290, cited in the brief of the Solicitor does not apply.

The examiner rejected claim 34 in the following language: Claim 34 states in part "releasing means for releasing said latch means, said releasing means being biased towards latch releasing motion and being restrained against motion by said fuse link, whereby when said fuse link is ruptured said releasing means will release said latch means.

"In the patent to Bowie there is shown a releasing means for releasing said latch means which is element 21 and it inherently biases but does not move and the bias is toward latch releasing motion and is restrained from motion. While this claim does not read verbatim on the functioning of the latch member, it is not believed that applicant's claim differentiates sufficiently to be patentable thereover."

The Board of Appeals affirming this holding said: "Claim 34 refers to latch means independent of the fuse link and restraining the fuse tube and releasing means for releasing the latch, said releasing means

being biased towards latch releasing motion and being restrained against motion by the fuse link. While Bowie does not appear to provide for the latch releasing motion being restrained by the fuse link, this sort of restraining mechanism is shown to be old in the patent to Boicourt et al. and, furthermore, it is believed that applicant's latch means for restraining the fuse tube against motion cannot be said to distinguish over Boicourt et al. in the matter of being independent of the fuse link since the latch means of applicant is such as to be released by the rupture of the fuse link."

In the Bowie structure the tube is not restrained against motion by means of a latch. It is held in normal position by a spring clip which partially encircles the tube near its upper end.

In the patent to Boicourt et al., there is a latch by means of which the tube is held in normal position. However, this latch would fall open if it were not directly restrained by the fuse link which passes over the top of the latch member and is then fastened to the face of the casing behind the tube. The entire strain of any tendency of the tube to fall outwardly must, of necessity, be borne by the fuse link. It cannot, therefore, be said that the latch is a means "independent of the fuse link for restraining said fuse tube against motion with reference to said supporting means," as set out in claim 34.

In the device of the application the latch itself restrains the tube directly and its restraining function is entirely free from any relation to the fuse link. It is true that the fuse link restrains the action of a hammer, which when the fuse link is ruptured strikes the bottom of a rod driving it in an upward direction. As the rod is moved upwardly it releases the said latch, permitting the upper part of the tube to be forced outwardly. The only stress, however, that is imposed upon the fuse link is that resulting from the spring which urges the hammer toward striking motion. It is clear to us that any strain on the latch is not communicated to the fuse link and, therefore, we hold that the latch means is independent of the fuse link for restraining said fuse tube against motion.

As we have heretofore set out, the latch releasing means of the application comprises the hammer urged into striking function against the rod by spring means and restrained from action by means of the fuse link. It will be observed that this releasing

means is combined with and gives effect to or is biased toward the latch releasing motion. We agree with appellant in his contention that the disclosure of either patent alone or their combined disclosures would not produce the invention set out in claim 34 and would not suggest the construction therein shown.

The motion to dismiss the appeals as to claims 16 and 18 is granted and the decision of the Board of Appeals rejecting claims 22 to 27 inclusive and claim 34 is reversed.

Reversed.